Dorella SANDERS, Appellant,

v.

The **PRUDENTIAL INSURANCE COM-PANY OF AMERICA** and Life Insurance Company of North America a/k/a INA Life Insurance Company, Appellees.

No. 2–84–250–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 19, 1985.

Steves, Leonard & Jones, and Sterling W. Steves, and William C. Cooper, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and Stephen L. Tatum, and Paul Boudloche, Fort Worth, for the Prudential Ins. Co. of America.

Thompson & Knight, and Maureen Murry, and David S. Kidder, Dallas, for Life Ins. Co. of North America a/k/a INA Life Ins. Co.

Before FENDER, C.J., and ASHWORTH and JORDAN, JJ. (sitting for JOE SPURLOCK, II, J.).

## OPINION

FENDER, Chief Justice.

This suit involves a claim made under two accidental death policies. The insured, Larry O. Sanders, was mortally wounded while assaulting one Charles Scheidel (the companion of his estranged wife, appellant, Dorella Sanders) with a cocked, loaded and

aimed 30–30 caliber rifle. After being shot once by Charles Scheidel, Larry Sanders got up off the ground, re-aimed his rifle and advanced again. Scheidel's second shot stopped the assault. Sanders died several hours later.

Appellees, The Prudential Insurance Company of America and the Life Insurance Company of North America, denied coverage under their accidental death policies.

The trial court granted appellees' motions for summary judgment which asserted that Larry Sanders' death was not accidental under the terms of the insurance policies. Appellees in their motions rely primarily on the deposition testimony of Larry Sanders' widow, appellant, who was the beneficiary under the two policies.

We affirm.

On August 16, 1981, at approximately 9:30 p.m., Larry Sanders confronted his estranged wife, appellant, and her companion, Charles Scheidel, in front of her home. Appellant and Scheidel had just returned from a trip and both were in or near the vicinity of Scheidel's automobile.

Mr. Sanders, who had been drinking and in the opinion of appellant was drunk, parked his truck in front of the house and approached the Scheidel car. He struck appellant and went towards Scheidel who was completely inside the trunk of his car, apparently arranging various items. Mr. Sanders, who was in possession of a loaded rifle, aimed it in the direction of Scheidel. Scheidel, who was a constable, had a pistol in the trunk of his car. Scheidel shot Sanders and knocked him down. Sanders came at Scheidel again, who then shot Sanders again. Sanders was hit twice, once in the hip and once in the chest. The summary judgment evidence does not establish if Mr. Sanders was hit first in the hip or in the chest. He died early the next morning.

Appellee Prudential's policy provided accidental death insurance if an insured "sustains accidental bodily injury .... ." Appellee Life Insurance Company of North America's policy provided protection "against loss resulting directly and independently of all other causes from bodily injuries caused by accident...."

The only material issue in this case is whether Mr. Sanders died as a result of an accident. In one point of error, appellant claims that the granting of the summary judgment was error because appellees' summary judgment evidence failed to show conclusively that Sanders' death was not accidental.

In *Republic National Life Insurance Company v. Heyward*, 536 S.W.2d 549 (Tex.1976), the Supreme Court enunciated the following test to determine whether an insured's death was accidental within the context of an insurance policy:

We therefore hold that injuries are "accidental" and within the coverage of an insurance policy ... if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

*Id.* at 557.

Although both sides agree that this language sets forth the appropriate standard, there is a dispute as to just what this standard means.

Appellant argues that this language mandates that a subjective test be used to determine whether an accident has occurred. In other words, appellant claims that the determination of whether an accident occurred must be made from the purely subjective viewpoint of the insured. On the other hand, appellee Life Insurance argues that the Texas standard of accident is whether a person of ordinary prudence in the same circumstances would reasonably have anticipated the injury. Appellee Prudential's articulation of the standard also embraces, or approaches, a subjective test.

■ We hold that *Heyward* sets forth a reasonable anticipation standard, and not a purely subjective one. In reaching this

conclusion, we note that the word "subjective" does not appear in *Heyward.* Consequently, the phrase "viewpoint of the insured" should not be considered synonymous with "subjective". Moreover, the *Heyward* court went on to write that an accident occurs "if from the insured's viewpoint his conduct was not such as to cause him to *reasonably* believe that it would result in his injury." *Heyward,* 536 S.W.2d at 557 (emphasis added). Other courts have also enunciated a reasonable anticipation standard. *See Stevenson v. Reliable Life Insurance Company,* 427 S.W.2d 945, 947 (Tex.Civ.App.—San Antonio 1968, no writ) ("From his viewpoint, he should have reasonably anticipated that appellant would shoot him if he continued to advance on her."); *Great American Reserve Insurance Company v. Sumner,* 464 S.W.2d 212, 214 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.) ("If the deceased, prior to death, engaged in some conduct toward his assailant from which he did know, or should have known, the assailant would kill him by violent means, . . .")

■ Applying the reasonable anticipation standard, we must now determine whether summary judgment was properly rendered. Appellant's deposition testimony establishes that Larry Sanders' threats toward appellant and Charles Scheidel provoked the incident. Specifically, Larry Sanders verbally threatened to kill appellant and knocked her down. He then threatened to kill Charles Scheidel, and approached Scheidel with a loaded rifle. Larry Sanders carried this rifle with the butt against his shoulder in firing position, aimed at Scheidel, with the rifle cocked and his finger on the trigger. These facts convince us that Larry Sanders must have, or should have, foreseen that Scheidel would act in self-defense.

A number of other cases in which an insured provoked his own death also demonstrate that summary judgment in this case was proper. *See McGowen v. Travelers Insurance Company,* 448 F.2d 1315 (5th Cir.1971); *Guillory v. Aetna Life Insurance Company,* 541 S.W.2d 883 (Tex.

Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Stevenson v. Reliable Life Insurance Company,* 427 S.W.2d 945 (Tex.Civ.App.—San Antonio 1968, no writ); *Spencer v. Southland Life Insurance Company,* 340 S.W.2d 335 (Tex.Civ.App.—Fort Worth 1960, writ ref'd).

Appellant enumerates eight factors which she contends reduced Larry Sanders' ability to appreciate the consequences of his actions, thus making the question of whether Sanders' death was accidental one for the jury to decide: (1) Sanders' state of intoxication; (2) darkness; (3) Charles Scheidel was a stranger to Sanders; (4) Charles Scheidel was partially hidden from Sanders' view; (5) most persons do not carry a loaded gun in the trunk of their car; (6) Scheidel did not verbally warn Sanders that he was about to shoot; (7) the time between the first and second gunshot wounds was brief; and (8) Sanders may have received the fatal chest wound as a result of Scheidel's first shot, thus negating appellees' argument that after the first shot, Sanders was or should have been on notice of the dangerous situation.

■ We disagree. The factors cited by appellant are immaterial to the issue of whether Sanders should have reasonably anticipated deadly self-defense from Scheidel. Appellant's testimony established that Sanders, after uttering verbal death threats to appellant and striking her, challenged and provoked Scheidel by pointing his loaded rifle at him. Regardless of whether Sanders actually anticipated that Scheidel would shoot back, under the reasonable anticipation standard, Sanders should have anticipated that his behavior would provoke Scheidel to respond with deadly force.

Moreover, Appellant has failed to produce any evidence which might demonstrate a link between Sanders' provocative behavior and the enumerated eight factors. In the absence of such a link, we hold the factors are immaterial.

■ The conclusion that Larry Sanders' death was not accidental does not arise

automatically from the fact that his conduct was felonious. We agree with appellant's position that the mere fact that an insured was killed while engaged in the commission of a felony, standing alone, is an insufficient basis for ruling that one's death under such circumstances was not accidental. *See Freeman v. Crown Life Insurance Company*, 580 S.W.2d 897, 901 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.).

Appellant's point of error is overruled.

The judgment below is affirmed.